IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
OXFORD DIVISION

**RICKEY ROBERTSON**                                                                                      **MOVANT**

v.                                                                         **No. 3:17CR16-SA-RP**

**UNITED STATES OF AMERICA**                                                 **RESPONDENT**

**MEMORANDUM OPINION**

This matter comes before the court on the motion of Rickey Robertson to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255. The government has responded to the motion, and the matter is ripe for resolution. For the reasons set forth below, the instant motion to vacate, set aside, or correct sentence will be denied.

*Habeas Corpus* **Relief Under 28 U.S.C. § 2255**

The writ of *habeas corpus*, a challenge to the legal authority under which a person may be detained, is ancient. Duker, The English Origins of the Writ of Habeas Corpus: A Peculiar Path to Fame, 53 N.Y.U.L.Rev. 983 (1978); Glass, Historical Aspects of Habeas Corpus, 9 St. John's L.Rev. 55 (1934). It is "perhaps the most important writ known to the constitutional law of England," *Secretary of State for Home Affairs v. O'Brien*, A.C. 603, 609 (1923), and it is equally significant in the United States. Article I, § 9, of the Constitution ensures that the right of the writ of *habeas corpus* shall not be suspended, except when, in the case of rebellion or invasion, public safety may require it. *Habeas Corpus*, 20 Fed. Prac. & Proc. Deskbook § 56. Its use by the federal courts was authorized in Section 14 of the Judiciary Act of 1789. *Habeas corpus* principles developed over time in both English and American common law have since been codified:

The statutory provisions on *habeas corpus* appear as sections 2241 to 2255 of the

1948 Judicial Code. The recodification of that year set out important procedural limitations and additional procedural changes were added in 1966. The scope of the writ, insofar as the statutory language is concerned, remained essentially the same, however, until 1996, when Congress enacted the Antiterrorism and Effective Death Penalty Act, placing severe restrictions on the issuance of the writ for state prisoners and setting out special, new *habeas corpus* procedures for capital cases. The changes made by the 1996 legislation are the end product of decades of debate about *habeas corpus*.

*Id.*

### Section 2255 Proceedings

Section 28 U.S.C. § 2255 permits an inmate serving a sentence after conviction of a federal crime "to move the court which imposed the sentence to vacate, set aside or correct the sentence." 28 U.S.C. § 2255(a). As with the writ of *habeas corpus*, *see* 28 U.S.C. §§ 2241, 2254, a § 2255 motion sets forth only four bases on which a motion may be made: (1) the sentence was imposed in violation of the Constitution or laws of the United States; (2) the court was without jurisdiction to impose the sentence; (3) the sentence exceeds the statutory maximum sentence; or (4) the sentence is "otherwise subject to collateral attack." 28 U.S.C. § 2255(a). Thus, a prisoner must claim either a constitutional violation or want of subject matter jurisdiction to invoke 28 U.S.C. § 2255. In the absence of constitutional or jurisdictional defects, a federal prisoner may invoke § 2255 only if the error constitutes "a fundamental defect which inherently results in a complete miscarriage of justice." *United States v. Addonizio,* 442 U.S. 178, 185 (1979).

The district court must first conduct a preliminary review of a section 2255 motion, and "[i]f it plainly appears from the motion, any attached exhibits, and the record of the prior proceeding that the moving party is not entitled to relief, the judge must dismiss the motion." Rules Governing Section 2255 Proceedings, Rule 4(b). If the motion raises a non-frivolous claim to relief, the court must order the Government to file a response or to take other appropriate action. *Id.* The judge may then require

the parties to expand the record as necessary and, if good cause is shown, authorize limited discovery. *Rules Governing Section 2255 Proceedings,* Rules 6–7.

After reviewing the government's answer, any transcripts and records of prior proceedings, and any supplementary materials submitted by the parties, the court must decide whether an evidentiary hearing is warranted. *Rules Governing Section 2255 Proceedings,* Rule 8. Under the statute, an evidentiary hearing must be held unless "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b). However, the court need not hold an evidentiary hearing if the prisoner fails to produce "independent indicia of the likely merit of [his] allegations." *United States v. Edwards,* 442 F.3d 258, 264 (5th Cir. 2006) (quoting *United States v. Cervantes,* 132 F.3d 1106, 1110 (5th Cir. 1998)).

Ultimately, the petitioner bears the burden of establishing his claims of error by a preponderance of the evidence. *See Wright v. United States,* 624 F.2d 557, 558 (5th Cir. 1980). For certain "structural" errors, relief follows automatically once the error is proved. *See Burgess v. Dretke,* 350 F.3d 461, 472 (5th Cir. 2003). For other errors at the trial court level, the court may grant relief only if the error "had substantial and injurious effect or influence" in determining the outcome of the case. *Brecht v. Abrahmson,* 507 U.S. 619, 637 (1993); *see also United States v. Chavez,* 193 F.3d 375, 379 (5th Cir. 1999) (applying *Brecht's* harmless error standard in a § 2255 proceeding). If the court finds that the prisoner is entitled to relief, it "shall vacate and set the judgment aside and shall discharge the prisoner or resentence him or grant a new trial or correct the sentence as may appear appropriate." 28 U.S.C. § 2255(b).

**Facts and Procedural Posture[1]**

Rickey Robertson, a.k.a. "Slick Rick", targeted and recruited vulnerable adult females ("victims") in the Memphis, Tennessee area to engage in prostitution or commercial sex acts. Robertson Change of Plea Tr., p. 15. Under Robertson's control and direction, the victims earned money in exchange for engaging in sex acts. *Id*. at 16. Robertson required the victims to provide him with the money that they earned, and he then provided them with a nominal amount with which to buy food and pay for hotel rooms. *Id*.

On at least two occasions in December 2015, Robertson transported, or arranged for the transport, of the victims from Memphis, Tennessee to Oxford, Mississippi in order for the victims to engage in commercial sex acts. *Id*. Under Robertson's direction, the victims posted advertisements on an internet site known as "Backpage" in order to solicit and advertise commercial sex. *Id*.

On November 29, 2015, law enforcement officers identified Robertson at an Oxford hotel and determined that he had rented a room at the hotel that was being used by victims. *Id*. On December 15, 2015, officers with the Oxford Police Department responded to a complaint that three females refused to vacate a room at a hotel in Oxford, Mississippi. *Id*.

Upon arriving at the scene, the three females were identified, and based on interviews and evidence retrieved from the females' phones, law enforcement agents determined that the three females were engaged in commercial prostitution at the Quality Inn on Jackson Avenue. *Id*. The three females were in Oxford, Mississippi under the direction of Robertson and Ladarius Jackson. *Id*.

---

[1] The court has drawn the facts and procedural posture in this case, with minimal changes, from the government's response to the instant § 2255 motion. The facts are both well-documented and undisputed.

On December 30, 2015, agents with the FBI determined that the victims associated with Robertson had active advertisements on Backpage, indicating that they were engaged in prostitution in Oxford, Mississippi. *Id*. at 17. The Oxford Police Department set up a sting operation and solicited commercial sex acts with one of the victims over the phone. Law enforcement officers located the victims at a hotel in Oxford. *Id*.

As a result of the undercover operation, law enforcement officers identified multiple females engaged in prostitution, and, based on interviews and evidence retrieved from the females' phones, agents determined that the four females were engaged in commercial prostitution. *Id*. The victims were in Oxford under the direction of Robertson. *Id*.

During the course of the conspiracy, Robertson and his co-conspirators used vehicles, public highways, hotels, telephones, and the internet to facilitate the commercial sex acts, in and affecting interstate commerce. *Id*. Robertson coerced the victims into continuing to engage in commercial sex acts by controlling the money earned by the victims. *Id*. at 18.

In February 2017, a federal grand jury returned an Indictment charging Robertson with – Count One: Conspiracy to Commit Sex Trafficking in violation of 18 U.S.C. § 1594(c); Count Two: Sex Trafficking in violation of 18 U.S.C. § 1591; and Counts Three & Four: Transportation to Engage in Prostitution in violation of 18 U.S.C. § 2421. The Indictment charged Ladarius Jackson in Counts One, Three and Four.

On March 27, 2018, Robertson pled guilty to Count One: Conspiracy to Commit Sex Trafficking in violation of 18 U.S.C. 1594(c). Count One carried a maximum sentence of life imprisonment, and his plea agreement provided for a cap of 240 months. In pleading guilty,

Robertson substantially agreed to the government's factual basis, but disputed any allegation that he had been violent towards the victims.[2]

The United States Probation Service prepared a Pre-Sentence Investigation Report ("PSR") and determined Robertson's total offense level as 38, which included a two-point enhancement for vulnerable victims and a two-point enhancement for his leadership role in the offense. With a total offense level of 38 and a criminal history category of I, Robertson's initial recommended Guideline range was 235 months to 293 months.

Robertson filed a number of objections to the PSR. The government conceded his objection to the two-point vulnerable victim enhancement, and the court resolved the remaining objections in a sentencing hearing. FBI Agent Walt Henry testified at the hearing, describing the allegations of violence against Robertson. Sentencing Tr., pp. 6-20. Robertson played a video recording of one of the victims, K.M., for the court. In the video, K.M. appeared to contradict some of her previous testimony before the grand jury. Sentencing Tr., p.27.

After hearing the testimony of Agent Henry and the arguments of counsel, the court found by a preponderance of the evidence that Robertson had been violent towards the victims – and also overruled his objection to the two-point leadership enhancement. Robertson's final recommended Guideline range was thus 188 to 235 months.

Robertson's defense counsel argued extensively that the court should give him consideration for his cooperation with the government and that he should have received a Motion for Downward

---

[2] Ladarius Jackson pled guilty to Count Three, Transportation to Engage in Prostitution in violation of 18 U.S.C. § 2421, which carried a maximum sentence of ten years imprisonment. *See* Jackson Plea Agreement, *United States v. Ladarius Jackson*, Case No. 3:17CR00016; *see also* Ladarius Jackson Appeal Record: Appeal No. 18-60084.

Departure from the government. Sentencing Tr., pp. 43-48. After hearing lengthy arguments from both Robertson's defense counsel and the government, the court considered the appropriate sentencing factors and specifically took into consideration the potential disparity between Robertson's and Jackson's sentences: "I am concerned about the disparity of the sentence between you and your co-defendant, Jackson; so therefore, I'm going to sentence you at the low end of the Guideline range. . . ." The court then sentenced Robertson to the low end of his Guideline range: 188 months.[3]

Following his sentencing, Robertson timely filed a Notice of Appeal. On Appeal, Robertson argued that the District Court failed to properly consider the disparity of sentences between himself and his co-defendant, Ladarius Jackson. On December 3, 2018, the Fifth Circuit issued a one-page unpublished opinion affirming Robertson's sentence. *See United States v. Robertson*, 744 F. App'x. 237, 2018 WL 6321222 (5th Cir. 2018). Robertson did not seek certiorari review with the Supreme Court.

He filed the instant 28 U.S.C. § 2255 Motion to Vacate, Set Aside or Correct Sentence on February 14, 2020, within the one-year limitations period for seeking such relief. In his § 2255 motion, Robertson argues that his sentence violated the Constitution because counsel provided ineffective assistance during his plea and sentencing. First, Robertson claims that his plea was not knowing or voluntary because he believed the government would file a 5K motion for downward departure, but the government did not do so. Robertson believes that his attorney should have secured a written guarantee from the government that it would filed a Motion for Downward Departure under 5K1.1 of the United States Sentencing Guidelines. In addition, Robertson claims that defense counsel

---

[3] Co-defendant Jackson received a 37-month sentence, an upward variance from his guideline range. *See* Jackson Judgment, *United States v. Ladarius Jackson*, Case No. 3:17CR00016.

failed to investigate allegations that federal investigators threatened witnesses to secure their testimony.[4] Finally, Robertson requests an evidentiary hearing to resolve this matter. For the reasons set forth below, the Movant's claims for relief will be denied, as will his request for an evidentiary hearing.

## Ineffective Assistance of Counsel

Robertson frames all his issues as claims that counsel provided ineffective assistance during his change of plea and sentencing. The court must address claims of ineffective assistance of counsel under the two-prong test set forth in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). To prove that defense counsel was ineffective, the petitioner must show that counsel's performance was deficient and that the deficiency resulted in prejudice to his defense. Under the deficiency prong of the test, the petitioner must show that counsel made errors so serious that he was not functioning as the "counsel" guaranteed by the Sixth Amendment. *Strickland*, 466 U.S. at 687. The court must analyze counsel's actions based upon the circumstances at the time – and must not use the crystal clarity of hindsight. *Lavernia v. Lynaugh*, 845 F.2d 493, 498 (5th Cir. 1988). The petitioner "must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Strickland*, 466 U.S. at 689 (citation omitted). To prove prejudice, the petitioner must demonstrate that the result of the proceedings would have been different or that counsel's performance rendered the result of the proceeding fundamentally unfair or unreliable. *Vuong v. Scott*, 62 F.3d 673, 685 (5th Cir. 1995), *cert. denied*, 116 S.Ct. 557 (1995); *Lockhart v.*

---

[4] Robertson also makes the wholly unsupported allegation that the lead investigator in the case made inappropriate advances towards his sister. However, such "conclusory allegations do not raise a constitutional issue in a *habeas* proceeding," *Ross v. Estelle*, 694 F.2d 1008, 1012 (5th Cir. 1983), and, in any event, such allegations have no bearing on Robertson's sentence. As such, the court will not discuss this issue further.

*Fretwell*, 506 U.S. 364, 369 (1993); *Sharp v. Johnson*, 107 F.3d 282, 286 n.9 (5th Cir. 1997). "When §2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard." *Harrington v. Richter*, 131 S.Ct. 770, 788 (2011); *Premo v. Moore*, 131 S.Ct. 733 (2011).

### Counsel's Performance Regarding the Government's Decision Not to File a Motion for Downward Departure

Robertson's primary issue in his § 2255 petition is the same as his primary complaint during sentencing: that the government did not file a Motion for Downward Departure pursuant to Section 5K1.1 of the Sentencing Guidelines ("5K Motion") on his behalf. Robertson argues that his plea was not knowing and voluntary because he believed he would receive the benefit of a 5K Motion, but did not. This claim for relief is without substantive merit.

"A plea of guilty admits all the elements of a formal criminal charge and waives all nonjurisdictional defects in the proceedings leading to conviction." *United States v. Cothran*, 302 F.3d 279, 285–86 (5th Cir. 2002); *see also United States v. Smallwood*, 920 F.2d 1231, 1240 (5th Cir. 1991). A plea is knowingly made when the defendant has "real notice of the true nature of the charge against him." *Bousley v. United States*, 523 U.S. 614, 618 (1998) (internal quotation marks omitted). A plea is voluntary if it does not result from force, threats, improper promises, misrepresentations, or coercion. *See United States v. Amaya*, 111 F.3d 386, 389 (5th Cir. 1997).

The court reviewed the plea supplement with Robertson during his change of plea hearing, Change of Plea Tr., pp. 12, and had the following exchange with him:

**The Court**: Okay. So did you go over the content of each of these agreements with your attorney before you signed?

| | | |
|---|---|---|
| **Robertson**: | | Yes, ma'am, we did. |
| **The Court**: | | Mr. Davis, did you have that conversation? |
| **Defense Counsel**: | | Yes, Your honor. |

Change of Plea Tr., p. 13

A Motion for Downward Departure is in the sole discretion of the government. The government has "a power, not a duty" to file a 5K Motion. *See United States v. Price*, 95 3d 364, 367-68 (5th Cir. 1996). In his § 2255 motion, Robertson suggests that "Defendant might have requested a written, formal offer from the State be given to him, so Defendant could use proof to *compel* the State in filing the 5K Motion. Trial counsel failed to properly formalize the negotiation proceedings, almost certainly causing prejudice against Defendant." Memorandum in Support of 2255, p. 4 (emphasis added).

There is no guarantee of a 5K Motion. It was not possible for Robertson to have obtained a written offer that would *compel* the filing of a 5K Motion. Robertson's plea supplement did not contain the standard language regarding cooperation, and he clearly admitted during his change of plea hearing that he understood his plea agreement with the government and that he had reviewed the plea documents with the government. But even if his plea supplement had included the standard language regarding cooperation, it would merely have stated that the decision to file a 5K motion lies in the sole discretion of the United States Attorney. Robertson's statements under oath in his change of plea hearing carry far more weight than his unsupported allegations in his § 2255 petition – which were raised years after the fact. This ground for relief is without substantive merit and will be denied.

In any event, Robertson's counsel actually argued during sentencing that the government should filed a motion for downward departure on his behalf. Sentencing Tr. p. 43-47. Counsel

described in detail that Robertson had participated in multiple proffer sessions and had provided information regarding multiple criminal enterprises that he believed should merit a 5K motion. However, at the time of his sentencing in the present case, Robertson was facing a murder charge in Memphis. *Id*. at 45. In addressing this problem, counsel merely stated, "Mr. Robertson, of course, denies that entirely." *Id*. At the time of the sentencing hearing, the Memphis prosecutor did not believe that Robertson was being candid regarding his role in the murder. *Id.* at 53. At sentencing, this court instructed the government to file notice if Robertson later provided information regarding the murder that the Memphis prosecution used. *Id.* at 55. At the time Robertson filed the instant § 2255 motion, the Memphis prosecutor stated that he had provided nothing beneficial to the investigation. *Id*. Indeed, despite denying participation in the murder during his sentencing hearing, Robertson later pled guilty to Facilitation of Murder, and, on February 7, 2020, he was sentenced to serve 15 years concurrent with his sentence in the instant case. *See* Robertson Shelby County Judgment, attached as Exhibit A to the government's Response.

Robertson was not truthful and did not provide helpful information regarding his murder charge in Memphis; as such, the government could not file a Motion for Downward Departure on his behalf (as the government would have had to aver to the contrary in the motion: that Robertson had provided truthful information that substantially assisted the government). The government made this point during arguments at the sentencing hearing. As such, Robertson's claim regarding counsel's failure to procure a guarantee that the government would seek a 5K downward departure on his behalf is without substantive merit and will be denied.

### Counsel's Performance Regarding Allegations of Witness Intimidation

Robertson also claims that the lead investigator threatened witnesses if they refused to

testify. The court considered this issue at Robertson's sentencing hearing during testimony of the lead agent:

> **Q**: Now, at any time, did you put any pressure on any of these females to tell you one thing or another?
>
> **A**. No. No. In fact, when we initially interviewed them, they weren't very cooperative. They weren't providing – they were providing some half truths. The next time I spoke with [victim], she was represented by counsel. And, in fact, they initiated the contact with us.
>
> So, when the interview – where she provided information against Mr. Robertson, she was present with her attorney. And then the next time she spoke and provided information against Mr. Robertson, that was in a federal grand jury.

Robertson Sentencing Tr., p. 14. The court heard this claim at Robertson's sentencing hearing – including direct testimony from the lead agent. Based on the testimony, the court rejected the allegation. This allegation cannot form the basis of a § 2255 motion because Robertson has offered no evidence to support it – and testimony given at sentencing refutes it. This claim for relief will therefore be denied.

## No Evidentiary Hearing

Robertson has requested a hearing to determine the merits of his claims. Under 28 U.S.C. § 2255, an evidentiary hearing must be held unless "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b). However, the court need not hold an evidentiary hearing if the prisoner fails to produce "independent indicia of the likely merit of [his] allegations." *United States v. Edwards,* 442 F.3d 258, 264 (5th Cir. 2006) (quoting *United States v. Cervantes,* 132 F.3d 1106, 1110 (5th Cir. 1998)). In the absence of such independent indicia, a "paper hearing" can be sufficient for a federal court to determine the facts in *habeas corpus* proceeding. *Amos v. Scott*, 61 F.3d 333 (5th Cir. 1995). As

discussed above, the facts in the record show that Robertson is entitled to no relief under 28 U.S.C. § 2255. His request for an evidentiary hearing will thus be denied.

## Conclusion

In sum, none of the Movant's claims has merit, and the instant motion to vacate, set aside, or correct sentence will be denied. In addition, the Movant's request for an evidentiary hearing will be denied. A final judgment consistent with this memorandum opinion will issue today.

**SO ORDERED**, this, the 29th day of March, 2023.

/s/ Sharion Aycock
U. S. DISTRICT JUDGE